UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-cv-117

| | |
|---|---|
| ASSOCIATED PETROLEUM CARRIERS, INC.<br><br>           Plaintiff,<br><br>  v.<br><br>ANTHONY C. MOSS, TOWN OF HOPE MILLS, STEPHEN F. DOLLINGER, Individually, and in his official capacity of Chief of Police of the Town of Hope Mills, IAN A. CORTESE, Individually, and in his official capacity as a police officer of the Town of Hope Mills, ELISHA R. LAWSON, Individually, and in her official capacity as a police officer of the Town of Hope Mills, and ASHLEY N. ROHWEDER, Individually, and in her official capacity as a police Seargeant of the Town of Hope Mills,<br><br>           Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

NOW COMES Plaintiff Associated Petroleum Carriers, Inc. ("Plaintiff") and hereby alleges and sets forth its Complaint against Defendants Anthony C. Moss ("Moss"), the Town of Hope Mills ("Town" or "Hope Mills"), Stephen F. Dollinger ("Chief Dollinger"), Ian A. Cortese ("Cortese"), Elisha R. Lawson ("Lawson"), and Ashley N. Rohweder ("Rohweder") (collectively "Defendants") as follows:

## INTRODUCTION

This Complaint arises from a high-speed pursuit of Moss orchestrated by Cortese and other employees of the Town of Hope Mills. On November 9, 2023, Cortese, Lawson, and Rohweder,

engaged Moss in a high-speed pursuit, reaching speeds of 100 miles per hour, through the Town of Hope Mills, greater Cumberland County, and Robeson County. The pursuit finally ended on Interstate 95 when Moss collided with Plaintiff's tractor trailer (hereinafter the "Accident") causing it to crash and overturn on the Interstate. During the pursuit, Cortese, Lawson, and Rohweder failed to adhere to adopted policies and procedures regarding pursuits, and instead opted to place the lives and property of the general public at risk.

## PARTIES AND JURISDICTION

1.      Plaintiff is a South Carolina Corporation with its principal office located in Spartanburg, South Carolina.

2.      Moss is a citizen and resident of Moore County, North Carolina.

3.      Defendant Town of Hope Mills is a North Carolina municipality located in Cumberland County, North Carolina.

4.      Chief Dollinger, upon information and belief, is the Chief of Police for the Town of Hope Mills, a police officer acting under color of State Law, and an employee of the Town of Hope Mills. Chief Dollinger is being sued in his individual capacity and his official capacity. Chief Dollinger is a citizen and resident of Cumberland County, North Carolina.

5.      Cortese, upon information and belief, is a police officer for the Town of Hope Mills, a police officer acting under color of State Law, and an employee of the Town of Hope Mills. Cortese is being sued in his individual capacity and his official capacity. Cortese is a citizen and resident of Cumberland County, North Carolina.

6.      Lawson, upon information and belief, is a police detective for the Town of Hope Mills, a police officer acting under color of State Law, and an employee of the Town of Hope

Mills. Lawson is being sued in her individual capacity and her official capacity. Lawson is a citizen and resident of Cumberland County, North Carolina.

7.     Rohweder, upon information and belief, is a police sergeant for the Town of Hope Mills, a police officer acting under color of State Law, and an employee of the Town of Hope Mills. Rohweder is being sued in her individual capacity and her official capacity. Rohweder is a citizen and resident of Cumberland County, North Carolina.

8.     Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants are residents of Cumberland County, North Carolina.

9.     The amount in controversy is in excess of $75,000.00.

10.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, because the parties are diverse in citizenship and the amount in controversy is in excess of $75,000.00.

## WAIVER OF IMMUNITY

11.    Plaintiff incorporates by reference the allegations of the preceding Paragraphs as though fully set forth herein.

12.    Upon information and belief, on July 1, 2023, Hope Mills purchased liability insurance, which was in effect at all points relevant to this Complaint.

13.    The liability insurance purchased by Hope Mills extended coverage to itself and its employees. This includes, but is not limited to Cortese, Lawson, Rohweder, and Chief Dollinger, who were engaged in the official business of Hope Mills while committing the torts alleged herein.

14.    By its purchase of liability insurance, Hope Mills, including its employees, has waived any defense of sovereign immunity pursuant to N. C. Gen. Stat. §160A-485(a) et *seq*.

3

15.     By Hope Mills' purchase of liability insurance, Defendants Cortese, Lawson, Rohweder, Chief Dollinger, and Hope Mills have waived any defense of sovereign immunity pursuant to N. C. Gen. Stat. §160A-485(a) et *seq*.

## FACTS
### Policies regarding Pursuits

16.     At all times relevant to the Complaint, Hope Mills and the Hope Mills Police Department (hereinafter "HMPD") adopted a policy manual which provided an overview of each officer's responsibilities, as well as HMPD's policies and procedures (the "2022 Policy Manual").

17.     At all times relevant to the Complaint, the 2022 Policy Manual applied to all Hope Mills Police Officers, including, but not limited to, Cortese, Lawson, Rohweder, and Chief Dollinger.

18.     Upon information and belief, Cortese, Lawson, Rohweder, and Chief Dollinger had reviewed the 2022 Policy Manual and knew the policies and procedures set forth therein.

19.     In the 2022 Policy Manual, under Policy Number 3.02, Hope Mills, by and through the HMPD, adopted a number of procedures regarding "Extraordinary Police Vehicle Operations." Section G of the 2022 Policy specifically applies to "Pursuits" and states:

> Any officer who has successfully completed the appropriate training in extraordinary police vehicle operations and is in an Authorized Police Department vehicle may initiate a pursuit when the officer, after weighing the factors to be considered prior to initiating extraordinary vehicle operation and determining that the need for the apprehension of the suspect or violator is greater than the danger of the pursuit to the public, the officer and the suspect or violator and that such pursuit can be accomplished with due regard for the safety of others.

20.     After choosing to engage in a pursuit, "[a]n officer and his supervisor shall **constantly evaluate** his/her decision to continue a pursuit" (emphasis added). The 2022 Policy Manual then sets forth a number of factors for the officer's consideration, including:

4

a. The likely harm from not apprehending the suspect as soon as possible;

b. The danger to the public created by the fleeing suspect's driving;

c. Whether the crime the suspect is believed to have committed is dangerous to persons or property;

d. Whether the suspect can be apprehended at a later time with little risk or danger to the public;

e. Whether the pursuit will likely be successful in apprehending the suspect;

f. External physical conditions substantially increase the danger of chasing beyond the importance of apprehending the suspect or violator; and

g. The officer shall consider whether the suspect can be identified using the prima facie rule of evidence in N.C.G.S § 20-141.5(c).

21.     Under Section G(2)(g), the 2022 Policy Manual specifically states that "a pursuit with little chance of stopping the suspect should cause the officer to terminate the chase."

 A pursuit may be terminated "at ***any time*** by the primary or secondary unit, the supervisor, or higher authority" (emphasis added).

22.     Policy Number 3.02, Section D states that "Officers shall at all times exercise due care in the operation of their vehicles. In any civil action resulting from the vehicular chase of a violator, the gross negligence standard shall apply in determining an officer's liability."

23.     Upon information and belief, Cortese, Lawson, Rohweder, and Chief Dollinger had received or otherwise undergone training with HMPD regarding Hope Mills' policies and procedures for "Pursuits" as laid out in the 2022 Policy Manual.

5

24.     Cortese, Lawson, Rohweder, and Chief Dollinger knew or should have known about the provisions regarding Extraordinary Police Vehicle Operations and Pursuits laid out in the 2022 Policy Manual.

### First Attempt to Arrest Anthony Moss

25.     On November 4, 2023, Cortese was performing his duties as a Patrol Officer for Hope Mills. During his patrol, Cortese stopped Moss' motor vehicle due to suspicious activity.

26.     Upon information and belief, during the stop, Cortese observed drug paraphernalia inside Moss' vehicle. When Cortese tried to access the vehicle, Moss locked the door and otherwise refused to exit the vehicle.

27.     In an effort to try and evade his impending arrest, Moss proceeded to drive away from the traffic stop at a high rate of speed.

28.     Cortese immediately returned to his vehicle and proceeded to engage Moss in a high-speed pursuit.

29.     Upon information and belief, Cortese was operating an authorized police department vehicle owned by Hope Mills as he was pursuing Moss.

30.     Moss proceeded to lead Cortese on a high-speed pursuit across Cumberland County. Upon information and belief, Cortese pursued Moss onto NC-162 and US-301 in an effort to try and apprehend Moss.

31.     Despite his efforts to apprehend Moss, Cortese was unsuccessful. In accordance with Section 2.02(G)(6) of the 2022 Policy Manual, Cortese voluntarily chose to call off the pursuit. As a result, Cortese failed to arrest Moss on November 4th.

32.    While Cortese failed to arrest Moss on November 4th, the pursuit was not fruitless. During the high-speed pursuit on November 4th, Cortese personally observed the lengths to which Moss would take in order to avoid arrest.

33.    Specifically, Cortese observed Moss engage in a number of reckless actions while driving, including, but not limited to:

    a.  Driving in excess of 15 miles per hour over the legal speed limit;

    b.  Operating a motor vehicle carelessly and heedlessly in willful and wanton disregard of the rights and safety of others;

    c.  Illegally operating a motor vehicle on the right half of the highway;

    d.  Entering into an intersection while a steady red circular light for traffic was facing Moss' direction of travel;

    e.  Passing vehicles in an unsafe manner; and

    f.  Failing to operate the vehicle within a single lane.

34.    Cortese's observations became the grounds for an arrest warrant issued on November 5, 2023.

35.    On November 5, 2023, Cortese filed a Warrant for Arrest for Moss in connection with the events on November 4th (the "November 5th Warrant"). The November 5th Warrant contained a number of charges including: (1) Flee/Eluding Arrest with Motor Vehicle; (2) Reckless Driving – Wanton Disregard; (3) Driving while Licensed Revoked; (4) Resisting Public Officer; (5) Possession of Drug Paraphernalia; (6) Driving Left of Center; (7) Failure to Stop at a Steady Red Light; (8) Unsafe Passing Yellow Line; and (9) Failure to Maintain Lane Control. A copy of this warrant is attached hereto as Exhibit A.

36.     On November 4, 2023, Officer Cortese gained actual, first-hand knowledge that Moss had an apparent willingness to engage in reckless and threatening driving. This is apparent based on the charges filed by Cortese in the November 5th Warrant and the "Charging Text" associated therewith.

37.     Upon information and belief, other officers were also made aware of the events which occurred on November 4th, including, but not limited to, Lawson, Rohweder, and Chief Dollinger. Therefore, Lawson, Rohweder, and Chief Dollinger also had knowledge that Moss had an apparent willingness to engage in reckless and threatening driving.

**Second Attempt to Arrest Anthony Moss**

38.     On November 8, 2023, Cortese attempted to arrest Moss for a second time. Upon information and belief, Cortese was performing his duties as a Patrol Officer for Hope Mills and when he observed Moss inside his motor vehicle.

39.     Upon information and belief, before Cortese could execute a lawful stop, Moss immediately took action to evade arrest. Moss drove away from Cortese at a high rate of speed.

40.     In an effort not to lose Moss for a second time, Cortese engaged Moss in a second high-speed pursuit.

41.     Upon information and belief, Cortese was operating an authorized police department vehicle owned by Hope Mills as he was chasing Moss.

42.     Moss proceeded to lead Cortese on a second high-speed pursuit across Cumberland County.

43.     Upon information and belief, Cortese pursued Moss onto NC-162 and Camden Road in an effort to try and ensure Moss' arrest.

8

44. Despite his efforts to apprehend Moss, Cortese was unsuccessful. In accordance with Section 2.02(G)(6) of the 2022 Policy Manual, Cortese voluntarily chose to call off the pursuit. As a result, Cortese failed to arrest Moss on November 8th.

45. On November 8th, Cortese observed for a second time the reckless actions Moss would take in order to evade arrest. For the second time in a span of four days, Cortese witnessed Moss' propensity for dangerous, reckless, and wanton behavior while evading arrest.

46. Specifically, on November 8th Cortese observed Moss engage in a number of reckless actions while driving, including, but not limited to:

   a. Driving in excess of 15 miles per hour over the legal speed limit;

   b. Operating a motor vehicle carelessly and heedlessly in willful and wanton disregard of the rights and safety of others;

   c. Illegally operating a motor vehicle on the right half of the highway; entering into an intersection while a steady red circular light for traffic was facing Moss' direction of travel;

   d. Passing vehicles in an unsafe manner; and

   e. Failing to operate the vehicle within a single lane.

47. Cortese's observations became the grounds for a second arrest warrant issued on November 9, 2023.

48. On November 9, 2023, Cortese filed a Warrant for Arrest for Moss in connection with the events on November 8th (the "November 9th Warrant"). The November 9th Warrant contained a number of charges including: (1) Flee/Eluding Arrest with Motor Vehicle; (2) Reckless Driving – Wanton Disregard; (3) Driving while Licensed Revoked; (4) Driving Left of Center; (5) Failure to Stop at a Steady Red Light; (6) Illegal Right Turn on Red; (7) Unsafe Passing Yellow

9

Line; and (8) Failure to Maintain Lane Control. A copy of this warrant is attached hereto as Exhibit B.

49. The second high-speed pursuit which occurred on November 8, 2023, cemented Cortese's actual, first-hand knowledge that Moss would do anything to evade arrest. This includes engaging in reckless and threatening driving in order to escape Cortese. This is apparent based on the charges filed by Cortese in the November 9th Warrant and the "Charging Text" associated therewith.

50. Upon information and belief, other officers were also made aware of the events which occurred on November 8th, including, but not limited to, Lawson, Rohweder, and Chief Dollinger.

51. By November 9, 2024, it was apparent to Cortese, Lawson, Rohweder, and Chief Dollinger that Moss would continue to engage in reckless and threatening driving in order to evade arrest.

**Third Attempt to Arrest Anthony Moss**

52. After being outsmarted by Moss on two occasions, Cortese made plans to arrest Moss on November 9, 2023.

53. In an effort to finally arrest Moss, Cortese enlisted the assistance of two fellow officers – Rohweder and Lawson.

54. Lawson is employed as a Detective by Hope Mills.

55. Rohweder is employed as a Seargeant by Hope Mills. As a Sergeant, Rohweder is Lawson and Cortese's superior officer. Moreover, in accordance with Policy Number 1.12 of the 2022 Policy Manual, Rohweder is responsible for ensuring Lawson and Cortese comply with all applicable policies and procedures.

10

56.     Upon information and belief, Chief Dollinger knew that Cortese, Lawson, and Rohweder were making plans to arrest Moss on November 9th. As set forth in Policy Number 1.03 of the 2022 Policy Manual, Chief Dollinger was the ultimate supervising officer and carried the ultimate responsibility for coordinating, controlling, and staffing all activities of police officers employed by Hope Mills. Chief Dollinger was also responsible for enforcing all policies adopted by Hope Mills.

57.     At or around 5:10 p.m. on November 9th, Cortese, Lawson, and Rohweder proceeded to locate Moss outside of his vehicle on Black Bridge Road in Hope Mills, N.C.

58.     At the time Cortese, Lawson, and Rohweder approached Moss, he was not engaged in the active commission of any crime. Moss did not otherwise pose an active threat to any individuals.

59.     Upon information and belief, the only reason for which Cortese, Lawson, and Rohweder approached Moss on November 9th was to effectuate the November 5th and November 9th Warrants.

60.     During the attempted arrest, Moss failed to listen to verbal commands and engaged Cortese in a verbal and physical altercation.

61.     At no point prior to or during the arrest did any of the police officers attempt to disable or prevent Moss from accessing his motor vehicle.

62.     Despite at least three officers being present on the scene, Moss gained access to his 2022 Dodge Challenger and immediately fled the scene.

63.     Cortese, Lawson, and Rohweder returned to their respective vehicles and proceeded to engage Moss in a third, and final, high-speed pursuit.

64.     Cortese was operating an authorized police department vehicle owned by Hope Mills. Upon information and belief, Cortese was the "Primary Unit" chasing after Moss.

65.     Upon information and belief, Lawson was operating an authorized police department vehicle owned by Hope Mills and followed Cortese as he was chasing Moss. Lawson was the "Secondary Unit" chasing after Moss.

66.     Upon information and belief, Lawson followed Cortese and Moss along the pursuit route from Hope Mills to the site of the Accident.

67.     Upon information and belief, Rohweder was operating an authorized police department vehicle owned by Hope Mills and followed Lawson and Cortese as they were chasing Moss.

68.     Upon information and belief, Rohweder followed Lawson, Cortese, and Moss along the pursuit route from Hope Mills to the site of the Accident.

69.     Upon information and belief, Moss led Cortese, Lawson, and Rohweder onto Golfview Road, Rockfish Road, and onto North Main Street in downtown Hope Mills. The pursuit continued through residential neighborhoods and small, residential, two-lane roads, including Chicken Foot Road, and Lakeupchurch Drive.

70.     With each mile of the pursuit, Moss engaged in a number of increasingly reckless and dangerous maneuvers to try and evade Cortese, Lawson, and Rohweder. Upon information and belief, Moss took action to weave in and out of traffic, ran vehicles off the road, drove at a high rate of speed, and ran through traffic lights. Through all of these dangerous and reckless maneuvers, Cortese, Lawson, and Rohweder were right behind Moss.

71.     Despite leading the officers through a downtown residential area, Cortese, Lawson, and Rohweder continued the high-speed pursuit in their effort to apprehend Moss.

72.     Because the pursuit occurred in the middle of the afternoon, members of the public were exposed to the high-speed pursuit. Upon information and belief, there were members of the general public who were driving their respective vehicles in the path of the pursuit. These persons were forced off of the road and otherwise forced to take evasive action in order to avoid Moss' and Cortese, Lawson, and Rohweder.

73.     Despite the obvious threat to members of the general public, Cortese, Lawson, and Rohweder continued after Moss. As a result, Cortese, Lawson, and Rohweder continued to incite Moss to engage in even more reckless behavior while driving.

74.     During this pursuit, Moss showed no signs of surrender, and successfully evaded Cortese, Lawson, and Rohweder's efforts to arrest him.

75.     Upon information and belief, other officers were made aware of the high-speed pursuit as it was occurring, including Chief Dollinger.

76.     Despite Chief Dollinger and other Hope Mills' officers knowing about the high-speed pursuit, no officers made any attempts to intercept Moss or his vehicle. Moreover, Chief Dollinger did not direct any efforts to close off any public roadways or otherwise attempt to direct Moss' path of travel away from other members of the public or busy public roadways.

77.     At no point while Moss was driving through the residential roads of Hope Mills did Cortese, Lawson, Rohweder, or Chief Dollinger make the decision to terminate the high-speed pursuit.

78.     Cortese, Lawson, Rohweder, and Chief Dollinger otherwise continued to pursue Moss despite the obvious and increasing threat to the lives and property of the public, in violation of Policy Number 3.02, Section G of the 2022 Policy Manual.

## Accident

79.     The high-speed pursuit continued outside of downtown Hope Mills and into Robeson County, North Carolina.

80.     By this point, Moss had successfully navigated onto I-95, a major public thoroughfare. Cortese, Lawson, and Rohweder, continued to pursue Moss.

81.     As the caravan approached the site of the Accident, Moss was operating his 2022 Dodge Challenger in the righthand travel lane of southbound I-95 in Saint Pauls, Robeson County, North Carolina.

82.     At this time, it is estimated that Moss was traveling over 100 miles per hour.

83.     Cortese, Lawson, and Rohweder were operating their respective vehicles directly behind Moss on I-95, traveling at or around 100 miles per hour.

84.     On I-95, ahead of Moss, Cortese, Lawson, and Rohweder, work crews for the North Carolina Department of Transportation had shut down several travel lanes as part of their ongoing construction of the I-95 corridor.

85.     The North Carolina Department of Transportation had also implemented required Work Zone Traffic Control Systems to warn oncoming traffic about upcoming construction. Upon information and belief, these systems included, but were not limited to, erecting orange "Road Work Ahead" signs and flashing electronic message boards alerting traffic of the lane closures.

14

86. Cortese, Lawson, and Rohweder otherwise knew or should have known about the lane closures on I-95 implemented by the North Carolina Department of Transportation.

87. The speed limit in this area of I-95 was reduced to 60 miles per hour.

88. As a result of the ongoing construction and reduced speed limit, I-95 traffic had slowed, and therefore, resulted in increased traffic congestion along I-95.

89. Cortese, Lawson, and Rohweder knew about the construction on the I-95 corridor, and otherwise knew or should have known that I-95 would have increased traffic and delays as a result of the construction.

90. Cortese, Lawson, and Rohweder otherwise knew or should have known that North Carolina Department of Transportation employees and construction work crews would be present alongside the I-95 corridor.

91. Despite knowing about the substantial increased risk to members of the public, Cortese, Lawson, and Rohweder, continued to pursue Moss into a known construction zone of I-95 at or around 100 miles per hour. Moreover, despite knowing about the substantial increased risk to members of the public, Chief Dollinger failed to call off the pursuit.

92. Moss, Cortese, Lawson, and Rohweder raced through the construction zone, at or around 6:31 p.m.

93. At or around the same time, a 2022 Freightliner Cascadia tractor carrying a Heil petroleum trailer (the "Freightliner") operated by Everett Watson was traveling in the righthand travel lane of southbound I-95.

94. The Freightliner was leased by Plaintiff and was hauling petroleum on behalf of Plaintiff's client.

95.     The Freightliner was lawfully traveling at or around 60 miles per hour through the construction zone.

96.     As Moss approached the rear of the Freightliner, Moss drove onto the right-hand shoulder of I-95 in an attempt to pass the Freightliner.

97.     As Moss was driving in the right-hand shoulder, he observed a concrete median barrier blocking off the right-hand shoulder of I-95.

98.     In an attempt to avoid the oncoming median barrier, Moss quickly merged back into the right-hand travel lane of I-95.

99.     While attempting to merge at speeds of 100 miles per hour, the rear of Moss' vehicle collided with the front of the Freightliner.

100.     The speed and force of the impact caused the Freightliner to run off the road to the right, strike the median barrier, and overturn on the right shoulder of I-95.

101.     Moss' vehicle traveled across the left travel lane of I-95, impacted with another vehicle, and ran off the road to the left. Moss' vehicle eventually came to a rest in the median of I-95.

102.     Cortese, Lawson, and Rohweder, brought their vehicles to a stop prior to colliding with the Freightliner. Thereafter, Cortese, Lawson, and Rohweder exited their vehicles and apprehended Moss.

103.     As a result of the collision, the Freightliner and associated trailer suffered significant damage. The petroleum stored in the Heil trailer spilled out onto the roadway and surrounding area.

16

104. Portions of I-95 were closed for almost 12 hours while work crews cleared the hazardous materials and vehicles from the scene.

105. Both the Freightliner and the Heil trailer were totaled in the collision.

106. On November 10, 2023, a final arrest warrant was issued for Moss (the "November 10th Warrant"). Moss was arrested on multiple charges including, but not limited to: (1) Fleeing Arrest with Motor Vehicle involving Cortese; (2) Fleeing Arrest with Motor Vehicle involving Rohweder; (3) Assault with a Deadly Weapon on a Government Official; (4) Resisting a Public Officer; (5) a second charge of Resisting a Public Officer; (6) Assault on Government Official/Employee; (7) Communicating Threats; (8) Reckless Driving – Wanton Disregard; (9) a second charge of Reckless Driving – Wanton Disregard; and (10) Driving While License Revoked. A copy of the November 10th Warrant is attached hereto as Exhibit C.

107. The charging text included in the November 10th Warrant makes it apparent that Cortese, Lawson, and Rohweder observed Moss engage in reckless driving that substantially endangered the lives and property of the public.

108. Despite their personal observations and knowledge of the ongoing substantial risk to members of the public, Chief Dollinger, Cortese, Lawson, and Rohweder refused to call off the high-speed pursuit.

109. Pursuant to Policy 3.02, Section G (6)(a) of the 2022 Policy Manual, Cortese had authority to call off the November 9th pursuit as the "Primary Unit."

110. Pursuant to Policy 3.02, Section G (6)(a) of the 2022 Policy Manual, Lawson had authority to call off the November 9th pursuit as the "Secondary Unit."

17

111. Pursuant to Policy 3.02, Section G (6)(a) of the 2022 Policy Manual, Rohweder had authority to call off the November 9th pursuit as the supervising officer over Cortese and Lawson.

112. Pursuant to Policy 3.02, Section G (6)(a) of the 2022 Policy Manual, Chief Dollinger had authority to call off the November 9th pursuit as the Chief of Police and the ultimate supervisory authority over Cortese, Lawson, and Rohweder.

113. During the high-speed pursuit, Cortese, Lawson, Rohweder, and Chief Dollinger failed to consider any of the factors delineated in Policy 3.02, Section G (2) of the 2022 Policy Manual. Cortese, Lawson, Rohweder and Chief Dollinger otherwise failed to constantly evaluate their decision to continue the pursuit of Moss in violation of Policy 3.02, Section G (2) of the 2022 Policy Manual.

114. Cortese, Lawson, Rohweder, and Chief Dollinger otherwise failed to adhere to adopted policies and procedures and set forth in the 2022 Policy Manual.

115. As a result of Defendants failures, Plaintiff has suffered significant economic harm, including, but not limited to, costs incurred for cleaning hazardous materials from the roadway, towing costs, and replacement value for the tractor trailer.

## FIRST CAUSE OF ACTION
### Negligent Training - Hope Mills

116. Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

117. Hope Mills owed Plaintiff a duty to provide professional and competent training to its police officers, including Cortese, Lawson, Rohweder, and Chief Dollinger.

18

118. Hope Mills breached this duty by their failure to provide adequate and competent training to Cortese, Lawson, Rohweder, and Chief Dollinger, on high-speed pursuit techniques and decision-making processes necessary to effectively and safely engage and terminate pursuits.

119. Hope Mills otherwise breached this duty by failing to adopt a rational and restrictive "Pursuit" policy with clear, objective criteria and to fully instruct its officers to make rational decisions concerning the pursuit of alleged lawbreakers.

120. That the negligent training of Cortese, Lawson, Rohweder, and Chief Dollinger was a proximate cause of the collision and the damages suffered by Plaintiff.

121. As a result of the negligent training of Cortese, Lawson, Rohweder, and Chief Dollinger, Plaintiff has suffered damages in excess of $75,000.00.

## SECOND CAUSE OF ACTION
### Negligence and Gross Negligence - Cortese

122. Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

123. At all times relevant to this Complaint, Cortese owed a duty to Plaintiff to not engage in negligence or gross negligence.

124. On November 9, 2023, Cortese breached this duty when he:

   a. Elected to engage Moss in a high-speed pursuit despite first-hand knowledge of Moss' propensity to engage in careless and reckless driving while attempting to evade arrest;

   b. Pursued after Moss in a method and manner so as to further incite reckless and careless driving on the part of Moss;

   c. Operated his vehicle at a speed greater than reasonable under the circumstances;

19

d.  Operated his vehicle carelessly and heedlessly in willful or wanton disregard of the rights and safety of others;

e.  Engaged in the pursuit of Moss in a careless, heedless, reckless, willful or wanton manner in disregard of the safety of others, in violation of the 2022 Policy Manual;

f.  Engaged in a high-speed police pursuit, at speeds at times at least 15 miles over the posted speed limit within the city limits of Hope Mills;

g.  Drove his vehicle upon an interstate without due caution and circumspection and at a speed or in a manner so as to endanger or to likely endanger others, in violation of N.C. Gen. Stat § 20-140(b);

h.  Pursued Moss in a manner through traffic within Hope Mills, Robeson County, and Cumberland County, resulting in third-party motorists being run off the road;

i.  Continued to pursue Moss in a high-speed pursuit despite knowing that there was little chance of stopping Moss;

j.  Willfully failed to apply the policies and procedures set forth in the 2022 Policy Manual regarding "Pursuits;" and

k.  Willfully failed to terminate the pursuit in accordance with the 2022 Policy Manual.

125.    The actions of Cortese as set forth above and within the preceding Paragraphs constitute willful and wanton conduct with conscious disregard for the rights and safety of others.

126.    That as a result of Cortese's negligence and gross negligence, Plaintiff suffered economic damages in excess of $75,000.00.

## **THIRD CAUSE OF ACTION**
## **Negligence and Gross Negligence of Lawson**

127.     Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

128.     At all times relevant to this Complaint, Lawson owed a duty to Plaintiff to not engage in negligence or gross negligence.

129.     On November 9, 2023, Lawson breached this duty when she:

    a.  Elected to engage Moss in a high-speed pursuit despite knowledge of Moss' propensity to engage in careless and reckless driving while attempting to evade arrest;

    b.  Pursued after Moss in a method and manner so as to further incite reckless and careless driving on the part of Moss;

    c.  Operated her vehicle at a speed greater than reasonable under the circumstances;

    d.  Operated her vehicle carelessly and heedlessly in willful or wanton disregard of the rights and safety of others;

    e.  Engaged in the pursuit of Moss in a careless, heedless, reckless, willful or wanton manner in disregard of the safety of others, in violation of the 2022 Policy Manual;

    f.  Engaged in a high-speed police pursuit, at speeds at times at least 15 miles over the posted speed limit within the city limits of Hope Mills;

    g.  Drove her vehicle upon an interstate without due caution and circumspection and at a speed or in a manner so as to endanger or to likely endanger others, in violation of N.C. Gen. Stat § 20-140(b);

    h.  Pursued Moss in a manner through traffic within Hope Mills, Robeson County, and Cumberland County, resulting in third-party motorists being run off the road;

i. Continued to pursue Moss in a high-speed pursuit despite knowing that there was little chance of stopping Moss;

j. Willfully failed to apply the policies and procedures set forth in the 2022 Policy Manual regarding "Pursuits;" and

k. Willfully failed to terminate the pursuit in accordance with the 2022 Policy Manual.

130. The actions of Lawson as set forth above and within the preceding Paragraphs constitute willful and wanton conduct with conscious disregard for the rights and safety of others.

131. That as a result of Lawson's negligence and gross negligence, Plaintiff suffered economic damages in excess of $75,000.00.

## FOURTH CAUSE OF ACTION
### Negligence and Gross Negligence of Rohweder

132. Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

133. At all times relevant to this Complaint, Rohweder owed a duty to Plaintiff to not engage in negligence or gross negligence.

134. On November 9, 2023, Rohweder breached this duty when she:

a. Elected to engage Moss in a high-speed pursuit despite knowledge of Moss' propensity to engage in careless and reckless driving while attempting to evade arrest;

b. Pursued after Moss in a method and manner so as to further incite reckless and careless driving on the part of Moss;

c. Operated her vehicle at a speed greater than reasonable under the circumstances;

22

d.  Operated her vehicle carelessly and heedlessly in willful or wanton disregard of the rights and safety of others;

e.  Engaged in the pursuit of Moss in a careless, heedless, reckless, willful or wanton manner in disregard of the safety of others, in violation of the 2022 Policy Manual;

f.  Engaged in a high-speed police pursuit, at speeds at times at least 15 miles over the posted speed limit within the city limits of Hope Mills;

g.  Drove her vehicle upon an interstate without due caution and circumspection and at a speed or in a manner so as to endanger or to likely endanger others, in violation of N.C. Gen. Stat § 20-140(b);

h.  Pursued Moss in a manner through traffic within Hope Mills, Robeson County, and Cumberland County, resulting in third-party motorists being run off the road;

i.  Continued to pursue Moss in a high-speed pursuit despite knowing that there was little chance of stopping Moss;

j.  Willfully failed to apply the policies and procedures set forth in the 2022 Policy Manual regarding "Pursuits;" and

k.  Willfully failed to terminate the pursuit in accordance with the 2022 Policy Manual.

135.    Moreover, as a Sergeant and the ranking officer involved in the high-speed pursuit on November 9th, Rohweder had the duty to ensure officers employed by Hope Mills complied with all department policies and procedures, including those set forth in the 2022 Policy Manual.

136.    Rohweder further breached this duty by failing to ensure Lawson and Cortese applied and adhered to the policies set forth in the 2022 Policy Manual.

23

137. The actions of Rohweder as set forth above and within the preceding Paragraphs constitute willful and wanton conduct with conscious disregard for the rights and safety of others.

138. That as a result of Rohweder's negligence and gross negligence, Plaintiff suffered economic damages in excess of $75,000.00.

**FIFTH CAUSE OF ACTION**
**Negligence and Gross Negligence of Chief Dollinger**

139. Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

140. Chief Dollinger owed Plaintiff a duty not to engage in negligence or gross negligence.

141. As Chief of Police, Chief Dollinger held ultimate supervisory control over the activities of Cortese, Lawson, and Rohweder. Moreover, Chief Dollinger owed Plaintiff a duty to enforce the rules and regulations adopted by Hope Mills and the Hope Mills Police Department, including those set forth in the 2022 Policy Manual.

142. Chief Dollinger breached this duty by:

   a. Permitting Cortese, Lawson, and Rohweder to violate the 2022 Policy Manual during their high-speed pursuit of Moss;

   b. Failing to terminate the high-speed pursuit despite knowing Moss' propensity to engage in reckless and careless behavior, the substantial risk posed by the high-speed pursuit, and the clear evidence that the high-speed pursuit would not result in Moss' capture.

   c. Willfully failed to apply the policies and procedures set forth in the 2022 Policy Manual regarding "Pursuits;" and

   d. Willfully failed to terminate the pursuit in accordance with the 2022 Policy Manual.

143.    The actions of Chief Dollinger as set forth above and within the preceding Paragraphs constitute willful and wanton conduct with conscious disregard for the rights and safety of others.

144.    That as a result of Chief Dollinger's negligence and gross negligence, Plaintiff suffered economic damages in excess of $75,000.00.

## SIXTH CAUSE OF ACTION
### *Respondeat Superior*

145.    Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

146.    At all times relevant to the Complaint, Cortese was employed by Hope Mills as a police officer. Cortese was acting the course and scope of his employment for his employer, in furtherance of the business of his employer, and incident to the performance of duties entrusted to him, such that Hope Mills is vicariously liable for Cortese's actions and conduct pursuant to the doctrine of *Respondeat Superior*.

147.    At all times relevant to the Complaint, Lawson was employed by Hope Mills as a Detective. Lawson was acting the course and scope of her employment for her employer, in furtherance of the business of her employer, and incident to the performance of duties entrusted to her, such that Hope Mills is vicariously liable for Lawson's actions and conduct pursuant to the doctrine of *Respondeat Superior*.

148.    At all times relevant to the Complaint, Rohweder was employed by Hope Mills as a Sergeant. Rohweder was acting the course and scope of her employment for her employer, in furtherance of the business of her employer, and incident to the performance of duties entrusted to him, such that Hope Mills is vicariously liable for Rohweder's actions and conduct pursuant to the doctrine of *Respondeat Superior*.

149.     At all times relevant to the Complaint, Chief Dollinger was employed by Hope Mills as a Chief of Police. Chief Dollinger was acting the course and scope of his employment for his employer, in furtherance of the business of his employer, and incident to the performance of duties entrusted to him, such that Hope Mills is vicariously liable for Chief Dollinger's actions and conduct pursuant to the doctrine of *Respondeat Superior*.

## SEVENTH CAUSE OF ACTION
### Negligence and Gross Negligence of Moss

150.     Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

151.     At all times relevant to this Complaint, Moss owed a duty to Plaintiff to not engage in negligence or gross negligence.

152.     On November 9, 2023, Moss breached this duty when she:

   a.   Elected to engage Cortese, Lawson, and Rohweder in a high-speed pursuit;

   b.   Operated his vehicle at a speed greater than reasonable under the circumstances;

   c.   Operated his vehicle carelessly and heedlessly in willful or wanton disregard of the rights and safety of others;

   d.   Engaged in a high-speed police pursuit, at speeds at times at least 15 miles over the posted speed limit within the city limits of Hope Mills;

   e.   Drove his vehicle upon an interstate without due caution and circumspection and at a speed or in a manner so as to endanger or to likely endanger others, in violation of N.C. Gen. Stat § 20-140(b);

   f.   Drove his vehicle in a willful or wanton manner through traffic within Hope Mills, Robeson County, and Cumberland County, resulting in third-party motorists being run off the road;

26

g. He failed to keep a proper lookout for other motorists, including Plaintiff's tractor trailer, traveling on the roadway;

h. He failed to keep his vehicle under proper control;

i. He failed to avoid colliding with other motorists, including Plaintiff's tractor trailer, traveling on the roadway; and

j. He collided with the tractor trailer leased by Plaintiff.

153. The actions of Moss as set forth above and within the preceding Paragraphs constitute willful and wanton conduct with conscious disregard for the rights and safety of others.

154. That as a result of Moss' negligence and gross negligence, Plaintiff suffered economic damages in excess of $75,000.00.

**EIGTH CAUSE OF ACTION**
**Punitive Damages**

155. Plaintiff incorporates by reference the allegations to the preceding paragraphs as if fully set forth herein.

156. The actions of the Defendants as set forth above and within the preceding Paragraphs constitute willful and wanton conduct under N.C.G.S. § 1D-5 and warrant an award of punitive damages under N.C.G.S. § 1D-15.

157. As a direct, proximate and foreseeable result of Defendants' willful and wanton conduct, Defendants are jointly and severally liable to Plaintiff for compensatory damages and Plaintiff is otherwise entitled to recover from Defendants punitive damages in an amount to be determined by a jury.

WHEREFORE, Plaintiff prays as follows:

1. That Plaintiff have and recover judgment against the Defendants, jointly and severally, for an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory damages, together with interest as allowed by law;

2. That Plaintiff have and recover punitive damages from the Defendants, jointly and severally, in a sum exceeding $75,000.00;

3. A trial by jury on all disputed issues of fact;

4. That all costs of this action including reasonable attorneys' fees be taxed to the Defendant as permitted by law; and

5. For such other and further relief as this Court may deem just and proper.

This, the 4th day of March, 2025.

/s/*Marc C. Tucker*
Marc C. Tucker
N.C. State Bar No. 25722
Mary K. Harris
N.C. State Bar No. 59326
Telephone: (919) 755-8700
Facsimile: (919) 755-8800
FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611

*Attorneys for Plaintiff*